Mike M. Arias, Esq. (SBN 115385)
Arnold C. Wang, Esq. (SBN 204431)
M. Anthony Jenkins, Esq. (SBN 171958)
**ARIAS SANGUINETTI WANG & TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone: (310) 844-9696
Facsimile:  (310) 861-0168
mike@aswtlawyers.com
arnold@aswtlawyers.com
anthony@aswtlawyers.com

Nicholas A. Coulson*
Lance Spitzig*
*Pro hac vice* applications to be submitted
**LIDDLE SHEETS COULSON P.C.**
975 E. Jefferson Avenue
Detroit, Michigan 48207
Telephone: (313) 392-0015
Facsimile:  (313) 392-0025
ncoulson@lsccounsel.com
lspitzig@lsccounsel.com

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KATHRYN CROUCH, on behalf of herself and all others similarly situated,<br><br>Plaintiff<br><br>vs<br><br>SAINT AGNES MEDICAL CENTER<br><br>Defendant | CASE NO. 1:22-cv-01527-ADA-EPG<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>Action filed:  October 21, 2022<br>Action removed:  November 23, 2022 |

ARIAS SANGUINETTI WANG & TORRIJOS, LLP

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Kathryn Crouch, by and through her attorneys, for her Complaint against Defendant Saint Agnes Medical Center, alleges and states as follows:

**INTRODUCTION**

1.      Plaintiff, on behalf of herself and all others similarly situated, brings this class action due to Defendant's disclosure of communications regarding Plaintiff's medical information.

2.      Specifically, Defendant aided and permitted Facebook to learn the contents of Plaintiff's communications between her and Defendant without consent.

3.      Further, Defendant shared, sold, and/or used Plaintiff's medical information for purposes not necessary to providing healthcare services and without Plaintiff's authorization.

4.      Plaintiff is a user of Defendant's website, www.samc.com (the "**Website**"), which offers a wide range of healthcare services.

5.      When Plaintiff used Defendant's Website, communications about her private medical information were shared with Facebook without first notifying Plaintiff and without her consent or authorization.

6.      Defendant violated section 631(a) of the California Invasion of Privacy Act, Cal. Penal Code §§ 630-638.55 (the "**CIPA**") each time it disclosed Plaintiff's communications without consent.

7.      Pursuant to section 637.2(a)(1) of the CIPA, Defendant is liable to Plaintiff for statutory damages in the amount of $5,000 for each disclosure of Plaintiff's communications.

**FIRST AMENDED CLASS ACTION COMPLAINT**

8.    Defendant also violated section 56.10(d) of the Confidentiality of Medical Information Act, Cal. Civil Code §§ 56.10-56.16 (the "**CMIA**") each time it disclosed Plaintiff's medical information without express authorization.

9.    Pursuant to section 56.36(b) of the Cal. Civil Code, Defendant is liable to Plaintiff for statutory damages in the amount of $1,000 for each disclosure of Plaintiff's medical information.

## PARTIES

10.    Plaintiff Kathryn Crouch is an individual that is over 18 years old and resides in Fresno, California. Plaintiff is a user of Defendant's Website.

11.    Defendant Saint Agnes Medical Center is a California corporation with its principal place of business at 1303 E Herndon Ave, Fresno, California. Defendant developed, owns, and/or operates the Website.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). CAFA jurisdiction is appropriate because there is diversity in citizenship between the parties, there are 100 or more Class Members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

13.    Venue is proper in this Court because Defendant is a resident of California and its principal place of business is California.

14.    Further, Defendant's Terms of Use specifies jurisdiction and venue as the

**FIRST AMENDED CLASS ACTION COMPLAINT**

ARIAS SANGUINETTI WANG & TORRIJOS, LLP

state and federal courts of California.[1]

## **GENERAL ALLEGATIONS**

### **Defendant's Website and Users**

15.     Defendant is a healthcare provider that developed, owns, and/or operates the Website.

16.     Thousands of individuals visit Defendant's Website each year.

17.     Individuals use Defendant's Website to search for medical information, services and physicians, schedule appointments, and pay for medical services.

18.     Defendant's Website collects various information about its users including, but not limited to:

a)  The type of medical treatment an individual is seeking;

b)  The name, gender, and specialty of physicians with whom individuals schedule appointments;

c)  The locations where individuals seek treatment; and

d)  When individuals register with support groups.

19.     Inquiries about medical services and physicians, the medical treatment an individual receives, details about an individual's physician, scheduling medical appointments, locations where treatment is received, registering with support groups, and data about payment for medical services each constitute private medical information.

---

[1] https://www.samc.com/terms-of-use-california-privacy-rights/ (accessed Sept. 13, 2022) ("In the event of any dispute or claim relating to the Site or these Terms of Use, you agree to resolution of such dispute in the state or federal courts located in California, in accordance with California law.").

**FIRST AMENDED CLASS ACTION COMPLAINT**

ARIAS SANGUINETTI WANG & TORRIJOS, LLP

20.    Accordingly, individuals communicate private medical information to Defendant by using its Website.

## Facebook and Facebook Pixel

21.    Facebook "require[s] people to connect on Facebook using the name that they go by in everyday life",[2] such that a person can be personally identified by their Facebook account.

22.    When someone creates a Facebook account, a corresponding Facebook ID ("**FID**") is also created.

23.    FIDs are uniquely associated with particular Facebook accounts, such that an FID can be used to identify and view the associated Facebook profile.

24.    Defendant monetizes its Website by knowingly and willfully collecting and disclosing Website users' online activity and communications about their medical information to Facebook.

25.    This constitutes an improper use of Website users' information by both Defendant and Facebook.

26.    Defendant's Website uses a code analytics tool called "Facebook Pixel", which was implemented at the discretion of Defendant.

27.    Facebook Pixel tracks the actions of Website users, such as the information they input on the Website, the pages they view, the physicians they view, the physicians

---

[2] https://transparency.fb.com/en-gb/policies/community-standards/account-integrity-and-authentic-identity/ (accessed Sept. 13, 2022).

**FIRST AMENDED CLASS ACTION COMPLAINT**

they call, the appointments they schedule, and the locations of those physicians/appointments.

28.    Each of these items are communications between a Website user and Defendant.

29.    When someone uses the Website, the user's FID and these communications about their medical information are simultaneously sent to Facebook via Facebook Pixel.

30.    For example, when someone visits Defendant's Website, they are categorized as a patient, job seeker, donor, or general browser:



31.    If "Patient" is selected, the Website visitor can then choose various options, such as "Find a Doctor":

///

///

///

///

///

**FIRST AMENDED CLASS ACTION COMPLAINT**

ARIAS SANGUINETTI WANG & TORRIJOS, LLP



32.    On the "Find a Doctor" page, individuals can search by physician name, specialty, title, location, gender, language, and/or insurance plan:



33.    Physicians meeting the specified criteria are listed on the results page:

///

///

**FIRST AMENDED CLASS ACTION COMPLAINT**

ARIAS SANGUINETTI WANG & TORRIJOS, LLP



34.     The profile of a physician may be selected to view additional information:

35.     When a physician is selected, the viewer's FID, which is represented by the

"c_user" cookie, is sent to Facebook via Facebook Pixel:

FIRST AMENDED CLASS ACTION COMPLAINT

+ https://www.facebook.com/tr/?id=2233198036969789&ev=Subscrib
edButtonClick&dl=https%3A%2F%2Fwww.samc.com%2Fprovider%2Fwade-
alden-dickinson-md-obgyn&rl=https%3A%2F%2Fwww.samc.com%2Ffind-
a-doctor%2Fprovider-results%3FSpecialtyId%3D88%26SpecialtyTex
t%3DOb%252FGyn%26RadiusDistance%3D50%26RadiusDistanceText%3D5
0%26radiusdistancetext%3D50%26PostalCode%3D93720%26OnlyAccepti
ngNewPatients%3Dfalse%26Gender%3D1%26GenderText%3DMale%26gende
rtext%3DMale%26LanguageText%3DSpanish&if=false&ts=164751951033
7&cd[buttonFeatures]=%7B%22classList%22%3A%22%22%2C%22destinat
ion%22%3A%22tel%3A559-797-9797%22%2C%22id%22%3A%22%22%2C%22ima
geUrl%22%3A%22%22%2C%22innerText%22%3A%22559-797-9797%22%2C%22
numChildButtons%22%3A0%2C%22tag%22%3A%22a%22%2a%22%2C%22name%22%3A%2
2%22%7D&cd[buttonText]=0-0-06cd[formFeatures]=%5B%5D&cd[pageFe
atures]=%7B%22title%22%3A%22Wade%20Alden%20Dickinson%2C%20MD%2
0-%20Ob%2FGyn%20-%20Fresno%2C%20California%20(CA)%22%7D&cd[par
ameters]=%5B%5D&sw=1920&sh=1080&v=2.9.57&r=stable&ec=2&o=30&fb
p=fb.1.1647517669788.2051550441&it=1647519467455&coo=false&es=
automatic&tm=3&exp=p1&rqm=GET

HEADERS
+ accept:              image/avif,image/webp,image/apng,image/sv
                       g+xml,image/*,*/*;q=0.8
+ accept-encoding:     gzip, deflate, br
+ accept-language:     en-US,en;q=0.9
+ connection:          keep-alive
+ cookie:              sb=XR8zYjtU54wAMIIpcqwNL5JT;
                       datr=XR8zYii1glNOOaf9U--LJwop; dpr=1.25;
                       c_user=10006            xs=27%3Adyxr6GPi-
                       KDZUQ%3AZ%3A.1647517611%3A-1%3A15115;
                       fr=03eNrYjYEZmGERGS0.AWUYRMLNtKuP5g45q7l6
                       zCvUBMQ.BiMx9d.Ag.AAA.0.0.BiMx-t.AWWzsk-
                       L4Aw
+ host:                www.facebook.com

36.   The "c_user" cookie that is transmitted by Facebook Pixel contains a viewer's unencrypted FID.

37.   A Facebook profile can be identified and viewed by appending an FID to the end of "Facebook.com," such that a person is identifiable by their FID.

38.   Facebook Pixel simultaneously discloses to Facebook the URL that the viewer has accessed (e.g. "www.samc.com"), the name and specialty of the physician searched for (e.g. "wade-alden-dickenson-md-obgyn"), and the location (e.g. within 50 miles of zip code 93720).

39.   The URL, physician name and specialty, location, and FID are simultaneously disclosed together and at the same time, whereby communications about a

**FIRST AMENDED CLASS ACTION COMPLAINT**

specific individual's medical information are read and learned by Facebook via that disclosure.

40.    Similarly, when an individual uses the "click to call" feature of Defendant's Website, their information is disclosed by Facebook Pixel, whereby Facebook reads and learns which physicians an individual called:



**FIRST AMENDED CLASS ACTION COMPLAINT**

ARIAS SANGUINETTI WANG & TORRIJOS, LLP

41.     When an individual registers for a class, support group, or event, that information is disclosed by Facebook Pixel, whereby Facebook reads and learns what an individual registered for:



**FIRST AMENDED CLASS ACTION COMPLAINT**

ARIAS SANGUINETTI WANG & TORRIJOS, LLP

42.    Any information entered into the search bar of the Website's home page is disclosed by Facebook Pixel, whereby Facebook reads and learns what medical information a person searches for:





**FIRST AMENDED CLASS ACTION COMPLAINT**

ARIAS SANGUINETTI WANG & TORRIJOS, LLP

URL

+ https://www.facebook.com/tr/?id=22331980369697896&ev=Microdata&dl=https%3A%2F%2Fwww.saintagnesca
re.com%2Fsite-search%2Fsearch-results%3Fq%3Dpostpartum%2520depression&rl=https%3A%2F%2Fwww.saintag
nescare.com%2F&if=false&ts=1647526811832&cd[DataLayer]=%5B%5D&cd[Meta]=%7B%22title%22%3A%22Search%
20Results%20Fresno%2C%20California%20(CA)%2C%20Saint%20Agnes%20Care%22%7D&cd[OpenGraph]=%7B%22og%3
Atitle%22%3A%22Search%20Results%20Fresno%2C%20California%20(CA)%2C%20Saint%20Agnes%20Care%22%2C%22
og%3Aurl%22%3A%22https%3A%2F%2Fwww.saintagnescare.com%2Fsite-search%2Fsearch-results%22%2C%22og%3A
locale%22%3A%22en_US%22%2C%22og%3Asite_name%22%3A%22Saint%20Agnes%20Care%22%7D&cd[Schema.org]=%5B%
5D&cd[JSON-LD]=%5B%7B%22%40context%22%3A%22http%3A%2F%2Fschema.org%22%2C%22%40type%22%3A%22WebSit
e%22%2C%22name%22%3A%22Saint%20Agnes%20Care%22%2C%22url%22%3A%22https%3A%2F%2Fwww.saintagnescare.c
om%22%7D%2C%7B%22%40context%22%3A%22http%3A%2F%2Fschema.org%22%2C%22%40type%22%3A%22BreadcrumbLis
t%22%2C%22itemListElement%22%3A%5B%7B%22%40type%22%3A%22ListItem%22%2C%22position%22%3A1%2C%22ite
m%22%3A%7B%22%40id%22%3A%22http%3A%2F%2Fwww.saintagnescare.com%2F%22%2C%22name%22%3A%22Home%22%7D%
7D%2C%7B%22%40type%22%3A%22ListItem%22%2C%22position%22%3A2%2C%22item%22%3A%7B%22%40id%22%3A%22htt
p%3A%2F%2Fwww.saintagnescare.com%2Fsite-search%2Fsearch-results.aspx%22%2C%22name%22%3A%22Search%2
0Results%22%7D%5D%7D%5D%5D&sw=1920&sh=1080&v=2.9.57&r=stable&ec=1&o=30&fbp=fb.1.1647521066813.6148
32030&it=1647526810416&coo=false&es=automatic&tm=3&exp=p1&rqm=GET

HEADERS

+ accept:            image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8
+ accept-encoding:   gzip, deflate, br
+ accept-language:   en-US,en;q=0.9
+ connection:        keep-alive
+ cookie:            sb=XR8zYitU54wAMIIpcqwNL5JT; datr=XR8zYiilqlNQOaf9U--LJwop; dpr=1.25;
                     c_user=10006                   xs=27%3Adyxr6GPi-kDzOQ%3A2%3A1647517611%3A-
                     1%3A15113;
                     fr=03eNrYjYEZmGERGS0.AWUYRMLNtKuP5g45q7l6zCvUBMQ.BiMx9d.Ag.AAA.0.0.BiMx-
                     t.AWWzsk-L4Aw
+ host:              www.facebook.com

43.    Each of these communications about Website users' medical information are willfully disclosed by Defendant to Facebook without user consent or authorization.

44.    Defendant knew that these communications and user FIDs are simultaneously disclosed by Facebook Pixel when individuals use Defendant's Website.

45.    Defendant also knew that such data may be used together to identify individuals and communications about their medical information.

46.    The U.S. Department of Health & Human Services has issued guidance instructing that such information which connects an individual with a healthcare provider is indicative that the individual has received or will receive health care services, and thus relates to the individual's past, present, or future health or health care or payment for care.[3]

---

[3] https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (accessed Jan. 18, 2023).

**FIRST AMENDED CLASS ACTION COMPLAINT**

ARIAS SANGUINETTI WANG & TORRIJOS, LLP

47.     Moreover, a number of hospitals have reported themselves for data breaches based on a use of Facebook Pixel that is substantially similar as that alleged herein.

48.     However, most hospitals are not using Facebook Pixel in this way.[4]

49.     Website users did not know that the communications between them and Defendant would be shared with a third party, such as Facebook.

50.     Defendant did not obtain the consent or authorization of Website users to disclose communications about their medical information.

51.     The surreptitious disclosure of medical communications is an outrageous invasion of privacy and would be offensive to a reasonable person.

## California Invasion of Privacy Act

52.     In recognition of this, the Legislature passed the CIPA "to protect the right of privacy of the people of this state." Cal. Penal Code § 630.

53.     Section 631 of the CIPA prohibits aiding or permitting a third party to read or learn the contents of any message, report, or communication that is in transit or passing over any wire, line, or cable, or is being sent from or received at any place within California, without the consent of all parties to the message, report, or communication.

54.     Internet communications pass over a wire, line, and/or cable.

55.     Using a website and entering information on a website are messages, reports, and/or communications between the website user and website developer, owner, and/or operator.

---

[4] https://arstechnica.com/tech-policy/2022/06/facebook-is-receiving-sensitive-medical-information-from-hospital-websites/ (accessed Jan. 18, 2023).

**FIRST AMENDED CLASS ACTION COMPLAINT**

ARIAS SANGUINETTI WANG & TORRIJOS, LLP

56. Such messages, reports, and/or communications are transmitted or pass over a wire, line, or cable.

57. Where a website user or a website developer, owner, or operator is based in California, the message, report, or communication is sent from and/or received in California.

58. When someone uses a website and enters information on that website, the sole parties to that message, report, or communication are the website user and the website developer, owner, or operator.

59. It is a violation of section 631 of the CIPA to allow someone other than the website user or website developer, owner, or operator to read or learn the contents of messages, reports, or communications between those parties without the consent of all parties.

60. When someone violates section 631 of the CIPA, the aggrieved party may bring a civil action for $5,000 per violation pursuant to section 637.2(a)(1) of the CIPA.

61. Pursuant to section 637.2(b) of the CIPA, the aggrieved party may also seek injunctive relief to enjoin and restrain the violative conduct.

62. Pursuant to section 637.2(c) of the CIPA, "it is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

**Confidentiality of Medical Information Act**

63. Section 56.10(d) of the CMIA prohibits healthcare providers from intentionally sharing, selling, or using (for marketing or otherwise) the medical information

**FIRST AMENDED CLASS ACTION COMPLAINT**

of patients, enrollees, or subscribers for any purpose not necessary to providing healthcare services, unless expressly authorized by the patient, enrollee, or subscriber.

64.     Implementing Facebook Pixel on a website is an intentional act.

65.     Disclosing medical information via Facebook Pixel constitutes intentional sharing, selling, and/or use of that information.

66.     Disclosing medical information through Facebook Pixel is not for any purpose necessary to providing healthcare services.

67.     When a healthcare provider violates section 56.10(d) of the CMIA, the person whose medical information was shared, sold, or used may bring a civil action for $1,000 per violation pursuant to Cal. Civil Code § 56.36(b)(1)

68.     Pursuant to Cal. Civil Code § 56.36(b)(1), "it is not necessary that the plaintiff suffered or was threatened with actual damages" to recover damages under this provision.

## PLAINTIFF'S USE OF DEFENDANT'S SERVICES

69.     Plaintiff is a patient, enrollee, and/or subscriber of Defendant.

70.     Plaintiff created an account on Defendant's Website in or around September 2021.

71.     Plaintiff has used Defendant's Website on numerous occasions to search for medical information, services and physicians, schedule appointments, and pay for medical services.

72.     Plaintiff used Defendant's Website at least once in each of September, October, and November 2021.

**FIRST AMENDED CLASS ACTION COMPLAINT**

73. This included searching for a physician, scheduling appointments with that physician, and paying for medical services rendered by that physician.

74. Plaintiff's use of the Website constitutes internet messages, reports, and/or communications between Plaintiff and Defendant.

75. Those internet messages, reports, and/or communications were transmitted and passed over a wire, line, or cable.

76. Those messages, reports, and/or communications were sent from and received in California.

77. Plaintiff has had a Facebook account at all times while using Defendant's Website, which she is perpetually logged into.

78. Plaintiff's Facebook profile contains her name, whereby she is personally identified by that information.

79. Each time Plaintiff used Defendant's Website, Defendant willfully disclosed Plaintiff's FID, the information she entered on the Website, the pages she viewed, the physicians she viewed, the physicians she called, the appointments she scheduled, and the locations of those physicians/appointments to Facebook via Facebook Pixel.

80. This information was simultaneously disclosed together and at the same time, whereby Facebook read and learned the contents of messages, reports, and/or communications between Plaintiff and Defendant.

81. Facebook is not a party to the messages, reports, or communications between Plaintiff and Defendant.

///

**FIRST AMENDED CLASS ACTION COMPLAINT**

ARIAS SANGUINETTI WANG & TORRIJOS, LLP

82.    By disclosing this information, Defendant intentionally, willfully, and/or negligently shared, sold, and used Plaintiff's private medical information.

83.    By implementing Facebook Pixel on its Website, Defendant aided and abetted Facebook in obtaining, reading, learning, and using Plaintiff's private medical information.

84.    Defendant and Facebook used Plaintiff's private medical information for profit, advertising, and/or marketing purposes.

85.    The disclosure of Plaintiff's medical information was not for any purpose necessary to providing healthcare services.

86.    Plaintiff did not know that the messages, reports, or communications between her and Defendant would be disclosed to Facebook.

87.    Plaintiff did not know that her medical information would be shared, used, sold, or otherwise disclosed to Facebook.

88.    Plaintiff did not consent to the messages, reports, or communications between her and Defendant being shared with Facebook.

89.    Plaintiff did not authorize the sharing, selling, or use of her medical information.

90.    Defendant intentionally, willfully, and/or negligently shared messages, reports, and communications (i.e. medical information) between Defendant and Plaintiff with Facebook, a third-party, for profit.

///

///

**FIRST AMENDED CLASS ACTION COMPLAINT**

**CLASS ALLEGATIONS**

**A. Definition of the Class**

91.     Plaintiff brings this action individually and on behalf of all persons that the Court may determine appropriate for class certification, pursuant to Fed. R. Civ. P. 23 (the "**Class**" or "**Class Members**"). Plaintiff seeks to represent a Class of persons preliminarily defined as:

> **All persons in California who have a Facebook account and used Defendant's Website to search for medical information, services or physicians, schedule appointments, register for classes or support groups, or pay for medical services.**

This definition is subject to modification as discovery discloses further information. Plaintiff reserves the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

92.     This case is properly maintainable as a class action pursuant to and in accordance with Fed. R. Civ. P. 23 in that:

a) The Class, which includes thousands of members, is so numerous that joinder of all Class Members is impracticable;

b) There are substantial questions of law and fact common to the Class, including those set forth in greater particularity herein;

c) Questions of law and fact, such as those enumerated below, which are common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

d) The claims of the representative party are typical of the claims of the Class;

e) A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

f) The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

**FIRST AMENDED CLASS ACTION COMPLAINT**

ARIAS SANGUINETTI WANG & TORRIJOS, LLP

g) There are no unusual difficulties foreseen in the management of this class action; and

h) Plaintiff, whose claims are typical of those of the Class, through his experienced counsel, will zealously and adequately represent the Class.

**B.  Numerosity**

93.    There are thousands of individuals who have used the Website and have searched for medical information, services or physicians, scheduled appointments, registered for classes or support groups, or paid for medical services. Accordingly, the Class Members are so numerous that joinder of all parties is clearly impracticable.

94.    The prosecution of separate lawsuits by Class Members would risk inconsistent or varying adjudications. Class-wide adjudication of these claims is, therefore, appropriate.

**C.  Commonality**

95.    Numerous common questions of law and fact predominate over any questions affecting individual Class Members including, but not limited to, the following:

a) Whether Defendant collected information about Class Members who used its Website;

b) Whether that information constitutes messages, reports, or communications under section 631 of the CIPA;

c) Whether that information constitutes medical information under section 56.10(d) of the CMIA;

d) Whether Defendant disclosed the messages, reports, or communications between Defendant and Class Members who used its Website;

e) Whether Defendant shared, sold, or used Class Members' medical information for purposes other than providing healthcare services;

**FIRST AMENDED CLASS ACTION COMPLAINT**

ARIAS SANGUINETTI WANG & TORRIJOS, LLP

f) Whether such disclosure was willful, intentional, or negligent;

g) The nature and extent of messages, reports, communications, and medical information disclosed;

h) How Class Members' messages, reports, communications, and medical information were disclosed and to whom; and

i) Whether Defendant's Website obtained consent or authorization before disclosing Class Members' messages, reports, communications, and medical information.

**D. Typicality**

96.    Plaintiff has the same interests in this matter as all other members of the Class and her claims are typical of the claims of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of substantially the same material and substantive facts, utilize the same complex evidence (e.g. expert testimony), rely upon the same legal theories, and seek the same type of relief.

97.    The claims of the Plaintiff and other Class Members have a common cause and their damages are of the same type. The claims originate from the synonymous disclosure of messages, reports, or communications by Defendant without consent.

98.    All Class Members have been aggrieved by Defendant's disclosure of their messages, reports, or communications without consent and are entitled to, *inter alia*, statutory damages.

**E. Adequacy of Representation**

99.    Plaintiff's claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class' claims will be prosecuted with diligence and care

**FIRST AMENDED CLASS ACTION COMPLAINT**

ARIAS SANGUINETTI WANG & TORRIJOS, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

by Plaintiff as representative of the Class. Plaintiff will fairly and adequately represent the interests of the Class and she does not have interests adverse to the Class.

100.    Plaintiff has retained the services of counsel who are experienced in complex class action litigation. Plaintiff's counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent the Plaintiff and all absent Class Members.

## F.  Class Treatment is the Superior Method of Adjudication

101.    A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

a) Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

b) Individual claims by Class Members would create a risk of inconsistent or varying adjudications, which would present the Defendant with incompatible standards of conduct;

c) Individual claims by individual Class Members would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of other individuals who are not parties to the adjudications, or substantially impair or impede their ability to protect and pursue their interests;

d) Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

e) In view of the complexity of the issues and the expenses of litigation, the separate claims of individual Class Members are likely insufficient in amount to support the costs of filing and litigating separate actions;

f) The Plaintiff seeks relief relating to the Defendant's common actions and the equitable relief sought would commonly benefit the Class as a whole;

g) The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

**FIRST AMENDED CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ARIAS SANGUINETTI WANG & TORRIJOS, LLP

h) The proposed class action is manageable.

## **CAUSE OF ACTION I**

**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT**

102.    Plaintiff restates all allegations of this Complaint as if fully restated herein.

103.    The Plaintiff, Class, and/or Defendant are located in California.

104.    Defendant, through its Website, is engaged in the business of providing medical services to the Plaintiff and Class.

105.    The Plaintiff and Class used Defendant's Website to search for medical information, services and physicians, schedule appointments, and pay for medical services.

106.    When the Plaintiff and Class used Defendant's Website, they were messaging, reporting, and/or communicating with Defendant.

107.    Those messages, reports, and/or communications were transmitted or passed over a wire, line, or cable, and were sent from and/or received within California.

108.    Defendant willfully disclosed the messages, reports, and/or communications with Facebook via Facebook Pixel.

109.    By doing so, Defendant willfully aided and permitted Facebook, a third-party, to read and learn of the messages, reports, and/or communications between the Plaintiff/Class and Defendant.

110.    The Plaintiff and Class were not aware Defendant was disclosing their messages, reports, and/or communications to Facebook.

FIRST AMENDED CLASS ACTION COMPLAINT

111.    The Plaintiff and Class did not consent to Defendant aiding or permitting Facebook to read or learn about the messages, reports, or communications between them and Defendant.

112.    Defendant is liable to the Plaintiff and Class for statutory damages of $5,000 for each time it disclosed a message, report, or communication to Facebook without consent.

## **CAUSE OF ACTION II**

## **VIOLATION OF THE CONFIDENTIALITY OF MEDICAL INFORMATION ACT**

113.    Plaintiff restates all allegations of this Complaint as if fully restated herein.

114.    Defendant is a healthcare provider.

115.    The Plaintiff and Class are patients, enrollees, and subscribers of Defendant.

116.    The Plaintiff and Class used Defendant's Website to search for medical treatments, services and physicians, schedule appointments, and pay for medical services.

117.    Defendant disclosed this medical information about the Plaintiff and Class with Facebook via Facebook Pixel.

118.    Defendant's sharing, sale, and/or use of the Plaintiff's and Class' medical information was done intentionally, willfully, and/or negligently.

119.    The disclosures of the Plaintiff's and Class' medical information was not for any purpose necessary to providing healthcare services.

120.    The Plaintiff and Class were not aware Defendant was sharing, selling, or using their medical information.

ARIAS SANGUINETTI WANG & TORRIJOS, LLP

121.    The Plaintiff and Class did not authorize the sharing, sale, or use of their medical information.

122.    Defendant is liable to the Plaintiff and Class for statutory damages of $1,000 for each time it shared, sold, or used their medical information without authorization for purposes not necessary to providing healthcare services.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, individually and on behalf of the proposed Class, prays for judgment as follows:

A.  Certification of the proposed Class by order pursuant to Fed. R. Civ. P. 23;

B.  Designation of the Plaintiff as representative of the proposed Class and designation of her counsel as Class counsel;

C.  Judgment in favor of the Plaintiff and Class Members as against the Defendant;

D.  An award to each Plaintiff and Class Member for statutory damages of $5,000 for each time Defendant disclosed a message, report, or communication to a third party without consent, pursuant to the CIPA;

E.  An award to each Plaintiff and Class Member for statutory damages of $1,000 for each time Defendant shared, sold, or used their medical information without authorization for purposes not necessary to providing healthcare services, pursuant to the CMIA;

F.  An award of injunctive relief prohibiting Defendant from disclosing messages, reports, or communications of Website users without consent and in accordance with the CIPA and CMIA;

G.  An award of attorneys' fees and costs, including pre- and post-judgement interest;

H.  An Order holding that Defendant's disclosure of the Plaintiff's and Class' messages, reports, and/or communications was in violation of the CIPA;

I.  An Order holding that Defendant's sharing, selling, and use of the Plaintiff' and Class' medical information was in violation of the CMIA; and

FIRST AMENDED CLASS ACTION COMPLAINT

ARIAS SANGUINETTI WANG & TORRIJOS, LLP

J.   Such further relief that this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Dated:      January 18, 2023                 **ARIAS SANGUINETTI WANG**
                                             **& TORRIJOS LLP**


                                   By:   _____*/s/ Mike M. Arias, Esq.*_____
                                         MIKE ARIAS, ESQ.
                                         ARNOLD C. WANG, ESQ.
                                         M. ANTHONY JENKINS, ESQ.

                                         **LIDDLE SHEETS COULSON P.C.**

                                         NICHOLAS A. COULSON, ESQ.*
                                         LANCE SPITZIG, ESQ.*
                                         *pro hac vice to be submitted*

                                         *Attorneys for the Plaintiff and Putative Class*

**FIRST AMENDED CLASS ACTION COMPLAINT**