UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN CROUCH, *on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>SAINT AGNES MEDICAL CENTER,<br><br>Defendant. | Case No. 1:22-cv-01527-ADA-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT (1) PLAINTIFF'S MOTION TO REMAND BE GRANTED; (2) DEFENDANT'S REQUEST FOR JUDICIAL NOTICE BE GRANTED; AND (3) DEFENDANT'S MOTION TO DISMISS BE DENIED AS MOOT<br><br>(ECF Nos. 15, 30, 34)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

Defendant Saint Agnes Medical Center removed this putative class action from state court, which alleges that Defendant violated California privacy and confidentiality statutes by using a code analytics tool on its website, Facebook/Metal Pixel (Pixel), that shared Plaintiff Kathryn Crouch's private information with Facebook. Defendant alleges jurisdiction under 28 U.S.C. § 1442(a)(1), which is known as the federal officer removal statute. (ECF No. 1).

Plaintiff moves to remand this case to state court, arguing that Defendant was not "acting under [a federal] officer" so as to provide subject matter jurisdiction over this case. (ECF No. 30. p. 10 (citing § 1442(a)(1)). The presiding District Judge has referred the motion for the preparation of findings and recommendations, and this Court held a hearing on the motion on April 14, 2023. (ECF Nos. 31, 37).

As explained below, the federal officer removal statute does not apply in these

1

circumstances because Defendant has failed to show that it "acted under" a federal officer. Thus, the Court will recommend that (1) Plaintiff's motion to remand be granted; (2) Defendant's request for judicial notice in support of its opposition be granted; and (3) Defendant's pending motion to dismiss be denied as moot. *See Azarbarzin v. Convatec Inc.*, No. CV 12-9800 GAF AJWX, 2013 WL 80271, at *1 (C.D. Cal. Jan. 7, 2013) (noting that remand of case mooted a defendant's motion to dismiss).

## I. BACKGROUND

### A. Summary of the Complaint

Defendant removed this case from the Fresno County Superior Court on November 23, 2022. (ECF No. 1). Plaintiff filed an amended complaint on January 18, 2023, bringing individual and putative class claims. (ECF No. 11). She alleges that Defendant uses the Pixel analytics tool on its website to track certain information, including information a user submits on its website. This information includes private medical data, which is thereafter shared with Facebook through Pixel.

Plaintiff alleges that her (and the putative class's) private medical information was shared with Facebook without her consent by Defendant's use of Pixel on its website. And this unauthorized sharing led to violations of California's Invasion of Privacy Act (Count I) and Confidentiality of Medical Information Act (Count II).

### B. Summary of the Basis for Removal

The notice of removal alleges jurisdiction under the federal officer removal statute. (ECF No. 1). In support, Defendant states that, in 2004, President George W. Bush, issued an executive order establishing a National Health Information Technology Coordinator, who was tasked with implementing "a strategic plan to guide the nationwide implementation of interoperable health information technology in both the public and private health care sectors that will reduce medical errors, improve quality, and produce greater value for health care expenditures." (ECF No. 33, p. 7). This directive, in conjunction with other federal policy enactments, led to the creation of the Meaningful Use Program, which, in part, provides incentive payments to eligible healthcare providers who create patient portals to make

electronic health records available to users. Defendant states that it created its own patient portal, "MySaintAgnes," under the Meaningful Use Program "to give its patients the opportunity to access their personal electronic health records" and "assisted the federal government in carrying out this federal directive by increasing web traffic to Saint Agnes' website, which contains a link to a patient portal on Saint Agnes' website." (ECF No. 33, p. 6, 10). While Defendant does not directly state so, a document attached to its opposition regarding compliance with the Meaningful Use Program shows that participation in the program is voluntary. (ECF No. 33-1, p. 7 – "This program is an incentive program. Therefore, while submission of information for this program is voluntary, failure to provide necessary information will result in delay in an incentive payment or may result in denial of . . . payment.").

### C. Overview of Parties' Arguments

Plaintiff argues that the Court lacks jurisdiction under the federal officer removal statute and thus should remand the case to state court. Specifically, Plaintiff was not acting under a federal officer because it has no agency relationship with the Government, was not under its control, did not fulfill a task the Government otherwise would have had to do, and would not face a significant risk of state-court prejudice as a result of its conduct. (ECF No. 30, pp. 13-14; ECF No. 35). In support of her argument, Plaintiff cites cases where courts concluded that a healthcare provider's participation in the Meaningful Use Program did not support jurisdiction under the federal officer removal statute.  *See Doe v. Torrance Mem'l Med. Ctr.*, No. CV 23-01237 DSF (JPRx), 2023 WL 2916548 (C.D. Cal. Apr. 12, 2023); *Quinto v. Regents of Univ. of California*, No. 3:22-CV-04429-JD, 2023 WL 1448050 (N.D. Cal. Feb. 1, 2023); *Doe, I v. BJC Health Sys.*, No. 4:22 CV 919 RWS, 2023 WL 369427 (E.D. Mo. Jan. 10, 2023).

Defendant counters that, by building a patient portal, it was assisting the Government "to fulfill a federal goal." (ECF No. 33, p. 14). Moreover, the Government monitored its compliance with the Meaningful Use Program, with Defendant "submitting detailed reports on patient portal activities." (*Id.*). And if not for Defendant, the Government would have had to build the electronic records system, and it could face significant state-court prejudice for its

actions. (*Id.* at 19). Defendant asserts that these circumstances show that it was acting under a federal officer for purposes of establishing jurisdiction under the federal officer removal statute. In support of its argument, Defendant cites two cases where courts concluded that a healthcare provider's participation in the Meaningful Use Program supported jurisdiction under the federal officer removal statute. *See Doe v. ProMedica Health Sys., Inc.*, No. 3:20 CV 1581, 2020 WL 7705627 (N.D. Ohio Oct. 30, 2020); *Doe I v. UPMC*, No. 2:20-CV-359, 2020 WL 4381675 (W.D. Pa. July 31, 2020).

Attached to its opposition, Defendant offers the declaration of an employee, who generally describes Defendant's participation in the Meaningful Use Program. (ECF No. 33-1). And in further support of its opposition, Defendant requests that the Court take judicial notice of various public Government documents relating to the Meaningful Use Program, such as the Office of the National Coordinator for Health Information Technology's 2011-2015 Federal Health Information Technology Strategic Plan. (ECF No. 34). Plaintiff has not opposed the request, and the Court will recommend that it be granted. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (noting that a court may take judicial notice of undisputed matters of public record).

## II.   STANDARDS

### A.  Motion to Remand

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The Ninth Circuit has characterized a motion to remand challenging the existence of removal jurisdiction as "the functional equivalent of a defendant's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)." *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014). "Like plaintiffs pleading subject-matter jurisdiction under Rule 8(a)(1), a defendant seeking to remove an action may not offer mere legal conclusions; it must allege the underlying facts supporting each of the requirements for removal jurisdiction." *Id.* Here, Plaintiffs raises a facial attack in the motion to remand—accepting the truth of Defendant's jurisdictional allegations but arguing they are insufficient to establish federal jurisdiction. *Id.* at 1121-22. Accordingly, the Court

considers whether Defendant's factual allegations, accepted as true, "are sufficient as a legal matter to invoke the court's jurisdiction." *Id.* at 1121.

### B. Federal Officer Removal Statute

The federal officer removal statute allows a civil action to be removed from state to federal court if it involves, in relevant part, "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . ." 28 U.S.C. § 1442(a)(1). This statute is interpreted "broadly in favor of removal." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006). However, "broad language is not limitless. And a liberal construction nonetheless can find limits in a text's language, context, history, and purposes." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007). The basic purpose behind the statute is to protect the Government from state interference with its operations, *e.g.*, state proceedings may reflect a local prejudice against unpopular federal law or federal officials. *See id.* at 150 (2007) (discussing history and purpose of the federal officer removal statute).

"To remove a state court action under the federal officer removal statute, a defendant must establish that '(a) it is a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a colorable federal defense.'" *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 684 (9th Cir.), *cert. denied*, 143 S. Ct. 444 (2022) (quoting *Stirling v. Minasian*, 955 F.3d 795, 800 (9th Cir. 2020)). "To demonstrate a causal nexus, the private person must show: (1) that the person was 'acting under' a federal officer in performing some 'act under color of federal office,' and (2) that such action is causally connected with the plaintiff's claims against it." *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 755 (9th Cir. 2022). Factors that courts "should consider in determining whether a private person is 'acting under' a federal officer for purposes of § 1442(a)(1)," include the following:

> Among other things, the Court considers whether the person is acting on behalf of the officer in a manner akin to an agency relationship. The Court also considers whether the person is subject to the officer's close direction, such as

acting under the subjection, guidance, or control of the officer, or in a relationship which is an unusually close one involving detailed regulation, monitoring, or supervision. Third, the Court considers whether the private person is assisting the federal officer in fulfilling basic governmental tasks that the Government itself would have had to perform if it had not contracted with a private firm. Finally, taking into account the purpose of § 1442(a)(1), the Court has considered whether the private person's activity is so closely related to the government's implementation of its federal duties that the private person faces a significant risk of state-court prejudice, just as a government employee would in similar circumstances, and may have difficulty in raising an immunity defense in state court.

*Id.* at 756-57 (internal citations and quotation marks omitted). The Court considers each of these factors in turn below.

### III.   ANALYSIS

#### A. Pertinent Case Authority

The Court has reviewed the cases cited by the parties, which have reached differing holdings on whether a healthcare provider's participation in the Meaningful Use Program confers jurisdiction under the federal officer removal statute. The Ninth Circuit has not yet reached this issue. After a review of the case authority on this issue and relevant law, the Court finds persuasive those decisions that have decided to remand in similar circumstances. *See Torrance Mem'l Med. Ctr.*, 2023 WL 2916548, at *3 (remanding case after concluding that defendant's participation in the Meaningful Use Program did not confer jurisdiction under the federal officer removal statute); *Heard v. Torrance Mem'l Med. Ctr.*, No. CV 22-09466 DSF (JPRx), 2023 WL 2475544, at *3 (same); *Quinto*, 2023 WL 1448050, at *3 (same); *BJC Health Sys.*, 2023 WL 369427, at *5 (same).

Generally, those cases reasoned that a healthcare provider's receipt of incentive payments under the Meaningful Use Program does not constitute "assistance" of a federal official, a healthcare provider's following requirements to receive incentive payments does not show close direction by the Government, a healthcare provider's creation of patient portals does not fulfill "a basic government task" that the Government would otherwise have to do, and other courts finding jurisdiction in similar circumstances have relied on an overly broad interpretation of the federal removal statute.

For example, in addressing whether a healthcare provider "assists" the Government by participating in the Meaningful Use Program, *Quinto* reasoned as follows:

> On the record before the Court, UC has not shown that it acted under a federal officer or agency. UC says that it uses the Facebook Tracking Pixel as part of its broader effort to assist the federal government in achieving its "mission of a nationwide digitized healthcare system." Dkt. No. 18 at 11. That is not enough for removal on federal officer grounds. Contrary to UC's suggestion, *see id.* at 12, receiving incentive payments for acting in a way that promotes a broad federal interest -- in an area outside the traditional responsibility of the federal government -- is not the same as being contracted to carry out, or assist with, a basic governmental duty.

2023 WL 1448050, at *2.

And regarding the requirements imposed to receive incentive payments, and whether they show close direction by the Government over a healthcare provider, *Torrance Memorial Medical Center* reasoned as follows:

> However, "[a] private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.' And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Watson*, 551 U.S. at 153. Courts "may not interpret § 1442(a) so as to 'expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries.'" *Cnty. of San Mateo*, 32 F.4th at 757 (quoting *Watson*, 551 U.S. at 153). The directions Torrance points to are general regulations and public directives regarding the development of health information technology and an electronic health records infrastructure. Therefore, removal is not justified by federal officer jurisdiction.

2023 WL 2916548, at *3.

As for whether the Government would otherwise have to create patient portals if a healthcare provider did not, *BJC Health System* reasoned as follows:

> BJC is not assisting or helping a federal officer carry out her duties or tasks by creating a website and patient portal to allow patients online access to medical information (and allegedly transmitting their private data to third parties without their knowledge or consent). Despite the federal government's expressed desire to encourage "the implementation of interoperable health information technology infrastructure," the statute neither authorizes nor obligates the federal government to create such an infrastructure itself. "[W]hile the federal government may have an interest in ensuring [an interoperable health information technology infrastructure], it is typically not the duty or task of the

7

> federal government to [provide patients online access to medical information]."
> [*Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 740 (8th Cir. 2021)] (cleaned up) (rejecting meat processors claim that it was "acting under" the direction of the federal government while operating its facility during the pandemic). Therefore, it cannot be said that BJC's creation of a website and online patient portal fulfills a "basic government task" that the federal government itself would otherwise be required to carry out.

2023 WL 369427, at *4.

Lastly, in rejecting the line of cases finding jurisdiction in similar circumstances as an overly broad interpretation of the federal officer removal statute, *Quinto* reasoned as follows:

> UC's heavy reliance on two out-of-circuit district courts is misplaced. *See* Dkt. No. 18 at 1 (citing *Doe I v. UPMC*, No. 2:20-cv-00359, 2020 WL 4381675 (W.D. Pa. July 31, 2020); *Doe v. ProMedica Health Sys., Inc.*, No. 3:20-cv-01581, 2020 WL 7705627 (N.D. Ohio Oct. 30, 2020)). These cases entailed an overly broad interpretation of what it means to assist a federal superior with its tasks or duties, which "would permit removal to federal court in circumstances far beyond anything Congress intended." [*Jalili-Farshchi v. Aldersly*, No. 3:21-CV-04727-JD, 2021 WL 6133168, at *4 (N.D. Cal. Dec. 29, 2021)] Consequently, the cases provide no basis for finding jurisdiction here.

2023 WL 1448050, at *3.

With such reasoning in mind, the Court now briefly evaluates the factors relevant to whether Defendant can be said to have been acting under a federal officer by participating in the Meaningful Use Program.

### B. Agency Relationship

Plaintiff argues, and Defendant does not contest, that Defendant is not an agent of the Government in connection with Plaintiff's allegations. (ECF No. 30, p. 11). However, Defendant counters that an "agency relationship is not required," as it is enough that it assisted the Government to fulfill a federal goal through its participation in the Meaningful Use Program. (ECF No. 33, pp. 13-14).

Defendant is correct that one need not be a Government agent to establish jurisdiction under the federal officer removal statute. *See Cnty. of San Mateo*, 32 F.4th at 756 (considering whether person was "acting on behalf of the officer in a manner akin to an agency relationship"). The Supreme Court has characterized the relationship required as involving "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson*, 551

U.S. at 152. In explaining how to construe the term "assistance," the Supreme Court advised as follows.

> In our view, the help or assistance necessary to bring a private person within the scope of the statute does not include simply complying with the law. We recognize that sometimes an English speaker might say that one who complies with the law "helps" or "assists" governmental law enforcement. Taxpayers who fill out complex federal tax forms, airline passengers who obey federal regulations prohibiting smoking, for that matter well-behaved federal prisoners, all "help" or "assist" federal law enforcement authorities in some sense of those words. But that is not the sense of "help" or "assist" that can bring a private action within the scope of this statute.

*Id.*

Applying this guidance, the Court concludes that Defendant's participation in the Meaningful Use Program is not the type of relationship sufficient to invoke federal jurisdiction. Rather, the Court agrees that "receiving incentive payments for acting in a way that promotes a broad federal interest . . . is not the same as being contracted to carry out, or assist with, a basic governmental duty." *Quinto*, 2023 WL 1448050, at *2. Notably, Defendant's participation in the Meaningful Use Program does not establish a "close relationship[] with the federal government" to show that Defendant was acting with or for a federal officer. *Cnty. of San Mateo*, 32 F.4th at 756. If anything, Defendant's mutually beneficial relationship with the Government shows that it was acting as a private party to advance its own interests rather than "assisting" the Government in performing a basic duty. *Id.* at 759 (finding no close relationship where "Standard [Oil Company] and the government reached an agreement that allowed them to coordinate their use of the oil reserve in a way that would benefit both parties").

### C. Close Direction

Plaintiff argues that the Government did not order Defendant to do anything and did not maintain "direct oversight over, manage[], or otherwise so much as had a hand in the process of building the patient portal" so as to establish close direction by the Government over its activities. (ECF No. 30, p. 12). Defendant argues that "the Meaningful Use program prescribes a specific framework and guidelines for providers to follow, and the federal government monitored compliance with the program through Saint Agnes submitting detailed reports on

patient portal activities," which shows close direction. (ECF No. 33, p. 18).

The Court concludes that, although Defendant's voluntary participation in the Meaningful Use Program came with some requirements to receive incentive payments, Defendant's compliance with those requirements does not show that Defendant was acting under the "subjection, guidance, or control" of any officer. *Watson*, 551 U.S. at 151 (citation omitted). At most, Defendant has demonstrated that, by choosing to participate in the Meaningful Use Program and follow its guidelines to receive incentive payments, "it operated as a private entity subject to government regulations," which is not sufficient to show that it acted under a federal officer. *Saldana*, 27 F.4th at 686; *Torrance Mem'l Med. Ctr.*, 2023 WL 2916548, at *3 (concluding that healthcare provider's citation to "general regulations and public directives" relating to the Meaningful Use Program did not support finding that the healthcare provider acted under a federal officer).

### D.  Duties Government Would Otherwise Have to Perform

Plaintiff argues that the Meaningful Use Program does not compel "the creation of patient portals" and the Government would not have had to build one had Defendant not opted to do so. (ECF No. 30, p. 13). Defendant asserts that "[w]ithout the use of private entities, the National Coordinator would be responsible for building this electronic records system itself." (ECF No. 33, p. 19).

As noted above, a defendant "must allege the underlying facts supporting each of the requirements for removal jurisdiction." *Leite*, 749 F.3d at 1122. Here, Defendant offers no facts to conclude that the Government would (or could) have built the patient portal for Defendant's patients to electronically access their health records had Defendant decided not to do so. Moreover, nothing from Defendant's description of the Meaningful Use Program supports Defendant's assertion. *See BJC Health Sys.*, 2023 WL 369427, at *4 ("Despite the federal government's expressed desire to encourage 'the implementation of interoperable health information technology infrastructure,' the statute neither authorizes nor obligates the federal government to create such an infrastructure itself.").

### E. Risk of State Court Prejudice

Lastly, Plaintiff argues that, because no federal duty is involved, Defendant would not face "the sort of state-court prejudice that a federal government employee might face." (ECF No. 30, p. 13). Defendant argues that it "faces a significant risk of state-court prejudice because this case falls squarely in the essential purpose of the federal officer removal statute—protecting federal operations and programs from interference through state-court litigation." (ECF no. 33, p. 19).

And as the Supreme Court has noted, "When a company subject to a regulatory order (even a highly complex order) complies with the order, it does not ordinarily create a significant risk of state-court prejudice. Nor is a state-court lawsuit brought against such a company likely to disable federal officials from taking necessary action designed to enforce federal law." *Watson*, 551 U.S. at 152 (internal citation and quotation marks omitted). Likewise, Defendants voluntary participation in a program to receive incentive payments, albeit subject to Government requirements, does not transform Defendant's private conduct into federal conduct. Accordingly, the Court cannot conclude that Defendant faces a risk of state court prejudice as a federal official might.

After consideration of the relevant factors, the Court concludes that Defendant's participation in the Meaningful Use Program does not give rise to the type of circumstances necessary to conclude that Defendant acted under a federal officer so as to confer jurisdiction under the federal officer removal statute.[1] Accordingly, the Court will recommend that this case be remanded to state court.

\\\

---

[1] Given this conclusion, the Court need not reach any of the parties' other arguments, such as whether there is a sufficient causal nexus between Plaintiff's claims and Defendant's conduct in relation to any direction by the Government. *See Cnty. of San Mateo*, 32 F.4th 733, 760 (9th Cir. 2022) ("Because we conclude that the Energy Companies have not carried their burden of proving by a preponderance of the evidence that they were 'acting under' a federal officer, we do not reach the question whether actions pursuant to the fuel supply agreement, unit agreement, or lease agreement had a causal nexus with the Counties' complaints, or whether the Energy Companies can assert a colorable federal defense.").

## IV. CONCLUSION AND RECOMMENDATIONS

For the reasons given above, IT IS RECOMMENDED as follows:

1. Plaintiff's motion to remand (ECF No. 30) be granted and this case be remanded to state court.
2. Defendant's request for judicial notice (ECF No. 34) be granted.
3. And Defendant's motion to dismiss (ECF No. 15) be denied as moot.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within fourteen (14) days after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 19, 2023**          /s/ Erica P. Grosjean
                                    UNITED STATES MAGISTRATE JUDGE